UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 3:18-cv-00221-MMD |
| PAUL A. MORABITO, | Bankr. Case No. 3:13-bk-51237-GWZ |
| Debtor. | Adv. No. 15-05019-GWZ |
| | Chapter 7 |

JH INC.; JERRY HERBST; BERRY-HINCKLEY INDUSTRIES,

          Plaintiffs/Appellees,

v.

PAUL A. MORABITO,

          Defendant/Appellant.

## APPEAL FROM JUDGMENT OF BANKRUPTCY COURT DETERMINING DEBT IS NONDISCHARGEABLE

## BRIEF OF APPELLANT PAUL A. MORABITO

David B. Shemano, Esq.
dshemano@shemanolaw.com
SHEMANOLAW
1801 Century Park East
Suite 1600
Los Angeles, CA 90067
Telephone: (310) 492-5033

Frank C. Gilmore, Esq.
fgilmore@rbsllaw.com
ROBISON SHARP SULLIVAN BRUST
71 Washington Street
Reno, Nevada 89503
Telephone: (775) 329-3151

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 7.1-1, appellant Paul A. Morabito is an individual and does not have any parent corporation or any shareholders.


DATED:  July 8, 2018                         SHEMANOLAW
                                             1801 Century Park East, Suite 1600
                                             Los Angeles, CA  90067
                                             Telephone: (310) 492-5033

                                                  and

                                             ROBISON SHARP SULLIVAN BRUST
                                             71 Washington Street
                                             Reno, Nevada 89503
                                             Telephone: (775) 329-3151


                                             By:   /s/ David B. Shemano
                                                   David B. Shemano, Esq.
                                                   Frank C. Gilmore, Esq.

                                             Attorneys for Paul A. Morabito

# <u>TABLE OF CONTENTS</u>

I.   STATEMENT OF BASIS OF APPELLATE JURISDICTION ......................1

II.  STATEMENT OF ISSUES ON APPEAL ................................................1

III. STANDARD OF REVIEW ......................................................................5

IV.  STATEMENT OF THE CASE .................................................................7

    A.   The Transaction Between the Parties ........................................7

    B.   The Post-Closing Dispute and Litigation ..................................8

    C.   The Settlement Agreement .......................................................10

    D.   The Confession of Judgment ...................................................11

    E.   The Default and Involuntary Petition ......................................13

    F.   The Nondischargeability Litigation..........................................13

        1.   Morabito Disavows the Admissions in the COJ ............13

        2.   The Amended Complaint ...............................................14

        3.   Herbst Files for Summary Judgment Based Solely on the COJ .....14

        4.   Morabito Disputes the Statements in the COJ ...............15

        5.   The Bankruptcy Court Grants Partial Summary Adjudication .......15

        6.   Herbst Insists on a Trial of the Fourth Cause of Action ................16

        7.   Morabito Files a Motion to Revise the Interlocutory Order
             Granting Partial Summary Adjudication.........................17

        8.   Herbst Files a Motion to Reopen the Evidence..............18

        9.   Morabito Discovers That Herbst Committed a Fraud on the
             State Court ....................................................................18

        10. The Bankruptcy Court Enters Final Judgment................21

V.   THE BANKRUPTCY COURT ERRONEOUSLY GAVE LEGAL
    CONSEQUENCE TO THE STATE COURT JUDGMENT AND
    FINDINGS...........................................................................................21

A.   The Bankruptcy Court Erred in Giving The State Court Findings and Judgment Evidentiary Weight ........................................................22

B.   The Bankruptcy Court Erred Because the State Court Findings Were Vacated ......................................................................................23

VI.   THE BANKRUPCY COURT ERRED BY HOLDING THE COJ CLAIM PRECLUSIVE ....................................................................24

VII.   THE BANKRUPTCY COURT ERRED BY HOLDING THE COJ ISSUE PRECLUSIVE ......................................................................26

A.   The Bankruptcy Court Erred Because the Fraud Statements in the COJ Were Not Litigated to a Final Judgment .........................................27

B.   The Bankruptcy Court Erred Because the Statements Relating to Fraud in the COJ Were Not Necessary to the Enforceability of the COJ .......................................................................................28

VIII.   THE BANKRUPTCY COURT ERRONEOUSLY APPLIED THE SHAM AFFIDAVIT RULE TO FIND  NO GENUINE DISPUTE AS TO ANY MATERIAL FACT .............................................................................30

A.   The Bankruptcy Court Erred Because the Morabito Testimony Did Not Contradict Prior Deposition Testimony in the Proceeding ..............31

B.   The Bankruptcy Court Erred Because the COJ Verification Was Not Sworn ...............................................................................................33

1.   The COJ Verification Was Not Sworn Because the Notary Did Not Inform The Debtor That His Statements Were an Oath ..........34

2.   The COJ Verification Was Not Sworn Because It Was Voluntary 34

3.   The COJ Verification Was Not Sworn Because the COJ Verification Was Effective Regardless of Whether it Was Under Oath or Not ..........................................................................35

C.   The Bankruptcy Court Erred Because There is no Factual Basis to Find That Morabito's Testimony Was Created Solely to Avoid Summary Judgment ..................................................................................36

IX.   THE BANKRUPTCY COURT ERRED IN HOLDING THAT HERBST
      DID NOT CONCLUSIVELY ADMIT MORABITO DID NOT COMMIT
      FRAUD .................................................................................................. 38

      A.   The Bankruptcy Court Erred in Not Ruling on the Fourth Cause of
           Action ......................................................................................... 41

X.    THE BANKRUPTCY COURT ERRED IN GIVING EFFECT TO A
      PREPETITION WAIVER OF NONDISCHARGEABILITY NOT
      REVIEWED AND APPROVED BY A COURT ........................................... 43

      A.   In re Wank ................................................................................... 44

      B.   In re Johnson ............................................................................... 46

XI.   THE BANKRUPTCY COURT ERRED IN CONCLUDING THE $85
      MILLION COJ WAS NOT AN UNENFORCEABLE PENALTY FOR
      DEFAULT ON THE $20 MILLION SETTLEMENT OBLIGATION ......... 47

XII.  THE BANKUPTCY COURT ERRED IN FINDING THAT THE
      ENTIRETY OF THE $85 MILLION CLAIM WAS PROXIMATELY
      CAUSED BY FRAUD ............................................................................... 49

XIII. CONCLUSION AND REQUEST FOR RELIEF ......................................... 51

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1120
   (5th Cir. 1991).............................................................................................40

*Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1128 (9th Cir. 2012) ...................25

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).......39

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)...................................30

*Archer v. Warner*, 538 U.S. 314 (2003)..............................................................3, 25

*Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162
   (7th Cir. 1995)...............................................................................................33

*Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017).....5

*Brown v. Felsen*, 442 U.S. 127, 133-139 (1979) ...................................................25

*Camreta v. Greene*, 563 U.S. 692, 713 (2011) ......................................................23

*Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) ................................................23

*Coast to Coast Demolition & Crushing, Inc. v. Real Equity Pursuit, LLC*,
   126 Nev. 97, 104 (2010) ............................................................... 29, 35

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
   671 F.3d 1011, 1026 (9th Cir. 2012) ...................................................43

*Dye v. Sachs (In re Flashcom, Inc.),* 2014 Bankr. LEXIS 4215
   (B.A.P. 9th Cir. 2014)..........................................................................48

*Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008)....................... 25, 26

*Frei v. Goodsell*, 305 P.3d 70, 72 (Nev. 2013).......................................................28

*Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017)..............................................6

*Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) ...................6

*Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995) ......26

*George v. City of Morro Bay (In re George),* 318 B.R. 729
   (B.A.P. 9th Cir. 2004) ........................................................................25

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219 (9th Cir. 2010).............. 49, 50

*Grogan v. Garner*, 498 U.S. 279(1991)...................................................26

*Gulf Oil Corp. v. Brock*, 778 F.2d 834. 838 (D.C. Cir. 1985) ................................23

*Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994)...................................28

*Hayhoe v. Cole (in Re Cole)*, 226 B.R. 647, 655 (B.A.P. 9th Cir. Cal. 1998) ........42

*Howard v. Sandoval (In re Sandoval)*, 126 Nev. 136, 140 (2010) ........................27

*In re E.R. Fegert, Inc.*, 887 F.2d 955, 957-58 (9th Cir. 1989) ................................19

*In re Johnson*, 2018 Bankr. LEXIS 1158 (B.A.P. 9th Cir. Apr. 16, 2018) ............46

*In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992) .......................................................1

*In re Slyman*, 234 F. 3d 1081, 1085 (9th Cir. 2000)...................................................2

*In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) ...........................6

*Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1176 (9th Cir. 2002) ................6

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)............... 31, 36

*Khan v. Bakhsh*, 306 P.3d 411 (Nev. 2013)............................................................48

*Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) ....................................33

*Licata v. State*, 99 Nev. 331, 332 (1983) ................................................................34

*Loomis v. Lange Fin. Corp.*, 109 Nev. 1121 (1993)..................................................6

*Malibu Textiles, Inc. v. Sentimental NY*, 2016 U.S. Dist. LEXIS 83688 n.19
   (S.D.N.Y. 2016) ..................................................................................32

*Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29 (9th Cir. 2007)........................38

*Mason v. Fakhimi*, 109 Nev. 1153 (1993) ..............................................................48

*Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985)........................38

*Olsen v. Bloomfield Group, Inc. (In re Olsen)*, 2014 Bankr. LEXIS 5007
(B.A.P. 9th Cir. Dec. 11, 2014) ...........................................................25

*Olvera v. Sierra Nev. Coll.*, 2010 U.S. Dist. LEXIS 3386 *18
(D. Nev. Jan. 14, 2010) ......................................................................32

*Phan v. Nguyen (In re Phan)*, 2014 Bankr. LEXIS 727
(B.A.P. 9th Cir. Feb. 24, 2014)...........................................................50

*Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.,*
2014 U.S. Dist. LEXIS 564 (N.D. Cal. Jan. 3, 2014)..........................49

*Purcell v. Schweitzer*, 224 Cal. App. 4th 969 (2014) ...................... 48, 49

*Radius v. Travelers Ins. Co.,* 87 F.2d 412, 415 (9th Cir. 1937) .............40

*Reese v. Herbert,* 527 F.3d 1253, 1270 n.8 (11th Cir. 2008) ..................32

*Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir. 2001) ..........25

*Robertson v. Isomedix, Inc. (In re International Nutronics)*, 28 F.3d 965, 969
(9th Cir. 1994)....................................................................................24

*Scheer v. State Bar (In re Scheer)*, 819 F.3d 1206, 1209 (9th Cir. 2016) ................1

*Schlang v. Key Airlines*, 158 F.R.D. 666, 671 (D. Nev. 1994).......... 23, 28

*Sekaquaptewa v. MacDonald*, 575 F.2d 239, 247 (9th Cir. 1978) .........43

*Staten v. Armstrong (In re Armstrong)*, 1996 U.S. App. LEXIS 21996
(9th Cir. Cal. Aug. 23, 1996) .............................................................50

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n,*
465 F.3d 1102, 1112 (9th Cir. 2006) ...............................................6, 40

*United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004) ..............22

*United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950) ..................23

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) .......32

*Wank v. Gordon (In re Wank)*, 505 B.R. 878 (B.A.P. 9th Cir. 2014) ............. 32, 44

*White v. State*, 102 Nev. 153, 156-57 (1986)........................................34

*Willerton v. Bassham by Welfare Div.*, 111 Nev. 10, 17 n.6 (1995) ......................27

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)............................................ 6, 222

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)..........................................6

**Statutes**

11 U.S.C. § 523(a)(2)........................................................... 2, 25, 31, 49

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 157 ...................................................................................1

NRS 17.100 ............................................................................. 28, 29, 35

**Rules**

Federal Rule of Bankruptcy Procedure 8002................................................1

Federal Rule of Civil Procedure 8(d)(2) ...................................................38

Federal Rule of Civil Procedure 12(b)(6) ..................................................38

Federal Rule of Evidence 403.......................................................... 22, 23

Federal Rule of Evidence 801 ..............................................................23

Appellant Paul A. Morabito ("Morabito") hereby submit his opening brief in support of his appeal from the *Judgment On The First And Second Causes Of Action* and *Judgment Re: Fourth Cause Of Action*, entered on the docket of the Bankruptcy Court in the above-captioned adversary proceeding on April 30, 2018 (the "Judgments").

# I.

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

The Bankruptcy Court has jurisdiction over the bankruptcy case of the above-captioned debtor pursuant to 28 U.S.C. §§ 157 and 1334.  This District Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

Pursuant to Rule 8002 of the Federal Rules of Bankruptcy Procedure, Morabito timely filed a notice of appeal from the Judgments on May 11, 2018 Appellant's Excerpts of Record ("AER"), Ex. 1.

# II.

## STATEMENT OF ISSUES ON APPEAL

"One of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts." *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992).  To effectuate the fresh start policy, "exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor." *Scheer v. State Bar (In re Scheer)*, 819 F.3d 1206, 1209 (9th Cir. 2016).

1

An exception to the discharge are debts obtained by fraud.  11 U.S.C. § 523(a)(2). In order to prove a debt should not be discharged because obtained by fraud, a creditor has the burden of proof to establish: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct."  *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000).

Over ten years ago, a garden-variety contract dispute arising out of a purchase agreement between Morabito and JH Inc., Jerry Herbst, and Berry-Hinckley Industries (collectively, "Herbst") evolved into a $150 million fraud judgment against Morabito.  The parties entered into a settlement agreement that vacated with prejudice and sealed the fraud judgment and accompanying findings, and required Morabito to pay approximately $20 million to Herbst.

After paying approximately $8.5 million and exhausting his assets, Morabito defaulted, which caused Herbst to record an $85 million confession of judgment that Morabito had signed as part of the settlement agreement.  The confession of judgment included extraneous statements, borrowed from the vacated findings, that Morabito had committed a fraud in the transaction.

After recording the confession of judgment, Herbst filed an involuntary bankruptcy petition against Morabito and then filed a complaint alleging that the claim based upon the confession of judgment is nondischargeable because based on fraud.  In response, Morabito disavowed the extraneous statements included in the confession of judgment and requested an evidentiary trial in which Herbst would be required to meet its burden of proof that Morabito had actually committed a fraud in connection with the underlying transaction.

To be very clear, Morabito did not dispute that the Herbst claim arising from the settlement agreement was *valid* and *enforceable*. He only disputed that the claim was *nondischargeable*.[1]

The Bankruptcy Court expressed disdain for Morabito's argument that he could disavow the statements in the confession of judgment and then relitigate whether he had committed a fraud ten years ago.  AER Ex. 25, pages 1453-54, 1456-57, 1464-65, 1470-71, 1474-77, 1488, 1502.  The Bankruptcy Court made very clear that under no circumstance would the Court conduct an evidentiary trial on whether or not Morabito actually committed fraud.  AER Ex. 25, page 1497.

---

[1] Morabito does not dispute that Herbst has the right to prove that the claim based on the breach of the settlement agreement is nondischargeable even through the fraud claim was dismissed with prejudice and transmuted into a contract claim under the settlement agreement. *Archer v. Warner*, 538 U.S. 314 (2003).

While the Bankruptcy Court made clear it was not going to permit Morabito to litigate whether he had committed a fraud, applicable Nevada and federal bankruptcy law permitted Morabito to relitigate whether he had actually committed a fraud.  Therefore, to reach the preordained result, the Bankruptcy Court was required to contort and misapply applicable Nevada and bankruptcy law to enter summary judgment that the confession of judgment is nondischargeable.

Morabito presents the following issues for review:

1.      Did the Bankruptcy Court err in holding that a confession of judgment has claim preclusive effect with respect to whether the judgment is nondischargeable?

2.      Did the Bankruptcy Court err in holding that extraneous statements in a confession of judgment have issue preclusive effect under Nevada law?

3.      Did the Bankruptcy Court err in holding that Morabito's contradiction of the fraud statements in the confession of judgment could be disregarded under the sham affidavit doctrine?

4.      Did the Bankruptcy Court err in holding that statements included in a confession of judgment solely to make the judgment nondischargeable are preclusive for purposes of nondischargeability where the confession of judgment was not reviewed and approved by the trial court?

5.      Did the Bankruptcy Court err in holding that Herbst's allegation that Morabito falsely stated in the confession of judgment that he had committed a fraud in connection with the transaction was not a conclusive judicial admission that Morabito did not commit a fraud in connection with the transaction?

6.      Did the Bankruptcy Court err in holding that the Herbst claim based upon a default under the settlement agreement was not an unenforceable penalty where the default increased the claim amount from approximately $20 million to $85 million?

7.      Did the Bankruptcy Court err in holding that the confession of judgment has issue preclusive effect with respect to the proximate and actual causation between Morabito's alleged fraud and the Herbst claim of $85 million?

8.      Did the Bankruptcy Court err in refusing to rule on the merits of the fourth cause of action to avoid the contradictions with the first and second causes of action?

## III.

## <u>STANDARD OF REVIEW</u>

A decision granting summary judgment is reviewed *de novo*. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material

fact and whether the trial court correctly applied the relevant substantive law. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

Preclusion determinations are reviewed *de novo.  Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016); *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1176 (9th Cir. 2002).

An application of the sham affidavit rule is reviewed for abuse of discretion. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  A bankruptcy court abuses its discretion if its decision is based on an erroneous conclusion of law or when the record contains no evidence on which the court rationally could have based the decision.  *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988).

The determination of whether a court can take judicial notice of and give evidentiary weight to a vacated judgment and related findings is reviewed *de novo*. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).

The determination of whether a pleading allegation is a conclusive admission is reviewed *de novo*. *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1111-12 (9th Cir. 2006).

The determination of whether a liquidated damages clause is enforceable is a legal question reviewed *de novo.  Loomis v. Lange Fin. Corp.*, 109 Nev. 1121 (1993).

# IV.

## STATEMENT OF THE CASE

The primary issue on appeal is whether summary judgment can be granted that a debt is nondischargeable based on fraud where the allegation of fraud is based entirely upon extraneous statements included in a confession of judgment and the extraneous statements are now disputed.

The Bankruptcy Court held that it was "unacceptable" for Morabito to disavow his verification of the extraneous fraud statements and, therefore, "will not conduct an evidentiary hearing to relitigate what has been previously litigated." AER Ex. 5, pages 45-46.  The Bankruptcy Court contorted and misapplied applicable law to avoid an evidentiary trial.  If Morabito is to be saddled with an $85 million nondischargeable judgment for the rest of his life, he is entitled to an evidentiary trial in which his alleged fraud is adjudicated on actual facts.

### A.     The Transaction Between the Parties

Morabito sold a chain of convenience stores and related assets to Herbst in 2007 pursuant to a stock purchase agreement (the "ARSPA").[2]  AER Ex. 32, pages 1618-78.  Total consideration was approximately $26 million, of which approximately $15 million was paid at closing.  Morabito was entitled to the

---

[2] The transaction involved a number of corporate entities, but the substance of the transaction was a sale by Paul Morabito to Jerry Herbst.

remainder of the purchase price upon the issuance of building permits and certificates of occupancy for certain development sites sold as part of the transaction.  AER Ex. 31, page 1589; AER Ex. 32, page 1635.  The transaction was vetted by an army of lawyers and financial advisors.  AER Ex. 32, page 1685; AER Ex. 37, page 2095.

### B.    The Post-Closing Dispute and Litigation

Pursuant to the ARSPA, Morabito submitted a working capital estimate to Herbst that determined the amount of cash paid at closing.  The estimate was subject to a post-closing reconciliation.  AER Ex. 32, pages 1633-34.

Post-closing Herbst alleged that the working capital estimate was overstated by approximately $9 million, which Morabito disputed.  Further, Herbst paid approximately $3.2 million to Morabito post-closing on account of the development sites but then days later refused to pay additional amounts owed after refusing to expend any more money for the issuance of any more building permits or certificates of occupancy.  AER Ex. 31, page 1593.

Morabito filed a lawsuit against Herbst in 2007 in state court in Nevada (the "State Court" and "State Court Litigation").  AER Ex. 5, page 37.  Herbst answered and filed counterclaims.  While the mutual claims originally were limited to breach of contract, over time the mutual claims evolved to fraud in the inducement, misrepresentation, defamation and slander.  AER Ex. 37, page 2079.

8

At trial, independent accountants appointed by the State Court determined that there was a $6.7 million discrepancy between the working capital estimate submitted by Morabito and the actual working capital at closing that could be verified.  Morabito could not explain a significant portion of the discrepancy at the trial.

In 2010, the State Court entered finding and conclusions (the "State Court Findings").  AER Ex 5, page 38; Ex. 37, pages 2093-2107.[3]  The State Court found no evidence that any financial statement was inaccurate and found that Morabito did not make any misrepresentation to Herbst regarding the value of the transferred assets.  AER Ex. 37, pages 2099, 2106.  However, the State Court also found that (1) Morabito had no good explanation for the discrepancy in the working capital estimate, so Morabito must have committed a fraud, and (2) Morabito never had any intention of performing his role as construction manager for the development sites, so his representation that he would perform that role was a fraud.  AER Ex.

---

[3] As explained below, the State Court Findings were subsequently vacated and sealed by the State Court as part of a settlement agreement.  Because the State Court Findings were sealed by the State Court, the State Court Findings were filed by Herbst under seal with the Bankruptcy Court pursuant to Order of the Bankruptcy Court.  As further explained below, the Bankruptcy Court relied heavily on the vacated and sealed State Court Findings in granting summary judgment.  As the Bankruptcy Court's public description of and reliance on the Findings negated the purpose and benefit of sealing the Findings, there is no reason the Findings should be filed with this Court under seal.  Accordingly, Morabito has included the Findings in Exhibit 37.

37, pages 2102-06.  In 2011, the State Court entered a fraud judgment in favor of Herbst for approximately $150 million (the "State Court Judgment").  AER Ex. 5, pages 37-38; AER Ex. 37, pages 2111-12.[4]

Morabito believed at the time, and continues to believe today, that the State Court Findings and Judgment, which turned a $6 million working capital discrepancy into a $150 million fraud judgment, were inexplicable and irrational. Among other things, the State Court found that the working capital estimate fraudulently induced Herbst to close the ARSPA, even though the working capital estimate was subject to a true-up and Herbst was required to close regardless of the estimate.  The State Court also found that Morabito fraudulently represented that he intended to perform the role of construction manager, even though the provision was insisted upon by Morabito, not Herbst, because Morabito was only entitled to payment regarding the development sites when they were completed, so he wanted some measure of control to ensure that the sites were developed as planned.

C.    **The Settlement Agreement**

After Morabito appealed, the parties engaged in a mediation that resulted in a settlement agreement (the "Settlement Agreement").  AER Ex. 5, page 38;  AER Ex. 32, pages 1915-41. Pursuant to the Settlement Agreement, Morabito agreed to

---

[4] The Judgment was also originally filed under seal, but is included by Morabito in Exhibit 37 for the reasons set forth in footnote 3.

make cash payments and assume liabilities aggregating over $20 million.  AER Ex.

32, pages 1917-21; Ex. 24, pages 1252-53.

In exchange for his agreement to drop the appeal and pay $20 million,

Morabito bargained hard to have the State Court Judgment and Findings vacated

with prejudice and placed under seal.  AER Ex. 31, page 1594. Herbst ultimately

agreed that the effectiveness of the Settlement Agreement was conditional on the

agreement of the State Court to vacate with prejudice the State Court Judgment and

Findings.  In exchange, Morabito deposited $2.5 million into an escrow account to

be released to Herbst if and when the State Court vacated the State Court Judgment

and Findings.   AER Ex. 32, pages 1910-11, 1922-24, 1926.  Critical to Morabito,

once the $2.5 million was paid, the Settlement Agreement was effective and the

vacatur was final and could not be undone, even if he subsequently defaulted.

AER Ex. 31, page 1595.

The State Court did agree to vacate and seal the State Court Judgment and

Findings, and the $2.5 million was released to Herbst in December 2011.  AER Ex.

32, pages 2022-23.

### D.    The Confession of Judgment

To induce Morabito to satisfy the $20 million of obligations required by the

Settlement Agreement, Herbst required Morabito to "to execute a confession of

judgment that by its terms will be non-dischargeable in any subsequent bankruptcy

filed by either CNC or Paul Morabito, in the amount of $85 million" (the "COJ").

AER Ex. 32, page 1911.

Pursuant to the Settlement Agreement, Herbst could not file the COJ unless

and until Morabito defaulted on the Settlement Agreement. The COJ was held by

Herbst and was not presented to the State Court for review and approval. AER Ex.

32, page 1924.

Morabito had agreed to a COJ at mediation because he agreed that Herbst

should not be required to go back to the State Court if Morabito defaulted on the

Settlement Agreement. AER Ex. 24, pages 1343-44. However, Morabito was not

presented with the actual form of the COJ until the night before the parties were to

go to the State Court to request vacatur of the State Court Judgment. AER Ex. 24,

pages 1350-51. He saw for the first time that the COJ required him to verify that

he had committed a fraud, which was not true. AER Ex. 24, pages 1350-51, 1381.

In response to his concern that the COJ was not factually true, Morabito was

told by his attorney that (1) he was contractually required by a settlement term

sheet to sign the COJ as prepared by Herbst, (2) the waiver of bankruptcy rights

was unenforceable, and (3) Morabito was "making a big deal out of nothing."

AER Ex. 24, pages 1189-90, 1344-45, 1352, 1356-58, 1363-64. Morabito signed

the COJ so that the Settlement Agreement could be consummated. AER Ex. 31,

page 1595.

### E.     The Default and Involuntary Petition

Morabito sold his Reno home and modified various asset protected trusts to access funds to make the required settlement payments.  Morabito made total payments of approximately $8.5 million, but then ran out of assets and defaulted.  AER Ex. 31, page 1594.  Herbst filed the COJ in June 2013 and then filed an involuntary bankruptcy petition two days later.  AER Ex. 5, page 39.  An order for relief under chapter 7 of the Bankruptcy Code was entered in December 2014.  AER Ex. 5, page 39.

### F.     The Nondischargeability Litigation

In March 2015, Herbst filed a Complaint against Morabito in the Bankruptcy Court alleging that the $85 million COJ was nondischargeable.  AER Ex. 42.  The Complaint alleged three causes of action: (1) nondischargeability based on fraudulent statements Morabito made that Herbs relied upon in entering into the ARSPA, (2) nondischargeability based on fraudulent writings Morabito submitted that Herbst relied upon in entering into the ARSPA, and (3) nondischargeability based on a statement in the COJ that Morabito stipulated and agreed that the COJ was nondischargeable.

#### 1.     Morabito Disavows the Admissions in the COJ

In his answer to the Complaint, Morabito denied he had committed a fraud in connection with the ARSPA and alleged that the statements included in the COJ

13

by Herbst concerning Morabito's alleged fraud were factually "false."  AER Ex. 41, page 2524.

### 2.      The Amended Complaint

In May 2015, Herbst filed an Amended Complaint.  AER Ex. 40.  In response to Morabito's disavowal of the fraud statements in the COJ, Herbst added a fourth cause of action alleging that "Defendant knowingly made false stipulations and representations and engaged in deceptive conduct" when Morabito verified the fraud statements in the COJ.  AER Ex. 40, pages 2346-47, 2350-52.

Morabito filed an answer once against denying he had committed a fraud and alleging the fraud statements in the COJ were factually false.  AER Ex. 39, pages 2324-25.

### 3.      Herbst Files for Summary Judgment Based Solely on the COJ

In June 2016, Herbst filed a motion for partial summary adjudication on the first three causes of action (the "MSJ").  While having the burden of proof, Herbst did not submit any declaration under penalty of perjury evidencing that Morabito had committed a fraud, that Herbst relied on the fraud in closing the ARSPA, or that the fraud proximately caused Herbst any harm.  Instead, Herbst relied entirely on the statements relating to fraud included in the COJ.  AER Exs. 36; 37; 38.

14

### 4.   Morabito Disputes the Statements in the COJ

Morabito filed a response (AER Ex. 35) which was accompanied by a

Morabito declaration under penalty of perjury stating (a) that he did not commit a

fraud, (b) that he only signed the COJ because he was advised that a pre-

bankruptcy waiver of the discharge was unenforceable, and (c) no person involved

in the settlement process could have actually and reasonably believed that the fraud

allegations contained in the COJ were true or that Morabito believed the

allegations to be true (the "Morabito Declaration").  AER Ex. 31.  The Morabito

Declaration was accompanied by extensive documentation evidencing that the

fraud statements in the COJ were factually false.   AER Ex. 32.

### 5.   The Bankruptcy Court Grants Partial Summary Adjudication

At a hearing on the MSJ in August 2016, the Bankruptcy Court granted

summary adjudication in favor of Herbst on the first and second causes of action.

AER Ex. 25, pages 1515-25.  The Bankruptcy Court concluded that the COJ was

(1) claim preclusive, (2) issue preclusive, and (3) the Morabito Declaration was a

"sham intended to create disputed facts with his own inconsistent statements to

defeat partial summary judgment" and the Bankruptcy Court "will not conduct an

evidentiary hearing to relitigate what was previously litigated."  AER Exs. 25; 26;

27, page 1541.

The Bankruptcy Court granted judgment in favor of Morabito on the third cause of action, finding that the stipulation in the COJ waiving the discharge was an unenforceable pre-bankruptcy waiver of the discharge.  AER Ex. 22.

### 6.    Herbst Insists on a Trial of the Fourth Cause of Action

After the Bankruptcy Court entered judgment in favor of Herbst on the first and second causes of action, Herbst insisted on a trial on the fourth cause of action, which was that Morabito fraudulently induced Herbst to reduce its claim from $150 million to $85 million by falsely stating in the COJ that he had committed a fraud in connection with the ARSPA.  AER Ex. 28; Ex. 40, pages 2350-52.

A trial was held on the fourth cause of action in September 2016.  AER Ex. 24.  The Bankruptcy Court recognized there was an anomaly: the Bankruptcy Court had entered judgment on the first and second causes of action based upon a finding that Morabito's statements in the COJ admitting to fraud were *true*, but the fourth cause of action was predicated on Morabito's statements in the COJ being *false*.  AER Ex. 24, pages 1157-64.

Notwithstanding the anomaly, the trial proceeded.  The trial testimony was strictly limited to testimony regarding the decision of the parties to settle, the negotiation and execution of the Settlement Agreement, and the preparation and execution of the COJ. The Bankruptcy Court did not permit any testimony

concerning whether Morabito committed a fraud in connection with the ARSPA.
AER Ex. 24, pages 1305-08.

After the evidentiary hearing, Herbst and Morabito filed post-trial briefs
regarding the fourth cause of action.  AER Exs. 19; 20.

### 7.    Morabito Files a Motion to Revise the Interlocutory Order Granting Partial Summary Adjudication

After the conclusion of the trial on the fourth cause of action, Morabito filed
a motion requesting that the Bankruptcy Court revise the interlocutory order
granting summary adjudication of the first and second causes of action.  AER Ex.
23.

Morabito argued that because Herbst elected to proceed to trial on the fourth
cause of action, the allegations in the Amended Complaint regarding the fourth
cause of action were now conclusive judicial admissions.  Because Herbst alleged
that Morabito falsely stated in the COJ that he had committed fraud in connection
with the ARSPA (which statements Morabito admitted were false), it was now an
established fact that Morabito's statements in the COJ were false and not true,
which required revision of the prior summary adjudication that was based upon a
finding that Morabito's statements in the COJ were true and not false.

Herbst filed an opposition and Morabito filed a reply. AER Exs. 18; 21.  The
Bankruptcy Court held a hearing on the motion in December 2016, and took the
matter under consideration.  AER Ex. 17.

### 8.   Herbst Files a Motion to Reopen the Evidence

Herbst then filed a motion to reopen the evidence relating to the fourth cause of action.  AER Ex. 15; 16.  Morabito filed a response and Herbst filed a reply. AER Exs. 11; 12; 13; 14.  The Bankruptcy Court heard the motion, permitted the submission of certain documents, and permitted Morabito to testify concerning the documents.  AER Exs. 7; 9; 10.

After the evidentiary hearing, Herbst and Morabito filed supplemental post-trial briefs regarding the fourth cause of action.  AER Exs. 6; 8.

### ~~9.   Morabito Discovers That Herbst Committed a Fraud on the State Court~~

~~At the MSJ hearing in August 2016, the Bankruptcy Court inquired "was any challenge made to that confession of judgment in the state court?" AER Ex. 25, page 1463.  The answer at the time was no, because as of that hearing there was no legal or factual basis to challenge the enforceability of the COJ in the State Court.~~

~~Subsequent to the August 2016 hearing, Morabito discovered evidence that Herbst had committed a very serious fraud on the State Court in the State Court Litigation.  Unbeknownst to the State Court, Morabito, and the independent accountants appointed in the State Court Litigation, Herbst had fraudulently manipulated post-closing financial statements to overstate the accounts payable at~~

18

closing, which fraud explained in great part the working capital discrepancy at trial that led to the fraud judgment against Morabito.  AER Ex. 43.[5]

Concerned about the possible scope of the Herbst fraud, Morabito engaged Victor S.O. Song, the former Chief of the Criminal Investigation unit of the Internal Revenue Service, Richard Speier, the former Deputy Chief of the Criminal Investigation unit, and Randy Wagner, an independent CPA, to review the relevant financial statements and resulting tax returns. The experts concluded that the financial statements were intended to mislead the State Court and the resulting tax returns were fraudulent. Song and Speier concluded:

> In our experience, individuals who knowingly submit documents to the government they do not believe to be true, (or in this case for use in litigation) do so knowing they are intentionally misleading or defrauding the government (or the court). Based on the Wagner report, that is the case here. Our opinion is that any court relying on the legitimacy of the dividend portrayed on the 6730/07 balance sheet was misled and defrauded.

AER Ex. 44, pages 2730-36.  Wagner concluded:

> A. In my opinion, the adjustment of the receivable was not made for the purpose of a proper accounting treatment, it was an adjustment that was made in order to support a knowingly false opinion of value on BHI and to mislead the State Court Judge.

---

[5] The discovery of the Herbst fraud was disclosed to the Bankruptcy Court in connection with a matter separate from this adversary proceeding.  This Court may take judicial notice of the separate pleadings filed with the Bankruptcy Court.  *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957-58 (9th Cir. 1989).

~~B. The Defendants knowingly misrepresented the financial condition of BHI so that they could further their scheme to mislead the Court about the value of BHI.~~

~~C. The Defendants creation of phantom assets, possible money laundering and the improper deduction of expenses, resulted in the Defendants preparing and filing a false tax return.~~

~~D. In my opinion, there is clear and convincing evidence establishing the fraudulent conduct of the Defendants during the State Court Trial.~~

~~AER Ex. 44, pages 2737-42.~~

~~If Herbst did in fact commit the alleged fraud on the court, that fact would be directly relevant to both the validity and nondischargeability of the COJ and create potential affirmative monetary claims against Herbst.~~

~~Morabito filed a complaint in the State Court in December 2016 against Herbst alleging fraud on the State Court and related claims (the "Fraud on the State Court Claims").⁶ Herbst removed the complaint to the Bankruptcy Court, which dismissed the complaint on procedural grounds without prejudice to Morabito's right to refile a complaint alleging the Fraud on the State Court Claims in the State Court.⁷~~

---

~~⁶ The complaint was filed prior to the engagement of the IRS and CPA experts, so Morabito did not become aware of the full scope of the Herbst fraud until months after the complaint was filed.~~

~~⁷ The Bankruptcy Court's procedural rulings regarding the Fraud on the State Court Claims are on appeal.~~

20

### 10.   The Bankruptcy Court Enters Final Judgment

On April 30, 2018, the Bankruptcy Court entered the Judgments, an accompanying Amended Findings and Conclusions, and accompanying Memorandum Decision.  AER Exs. 2; 3; 4; 5.  The Judgment regarding the first and second causes of action reaffirmed the earlier interlocutory judgment granting summary adjudication on the first and second causes of action.  The Judgment regarding the fourth cause of action found the fourth cause of action "unnecessary" in view of the Judgment on the first and second causes of action, so on that basis judgment was granted in favor of Morabito.

## V.

## THE BANKRUPTCY COURT ERRONEOUSLY GAVE LEGAL CONSEQUENCE TO THE STATE COURT JUDGMENT AND FINDINGS

The Bankruptcy Court avoided conducting an evidentiary trial by ruling that the COJ was preclusive with respect to the fraud issues and that the Morabito Declaration was a sham.  As set forth below, the rulings were erroneous.  But the rulings are especially problematic because of an error that pervaded throughout the proceeding – the Bankruptcy Court relied heavily upon and gave the vacated State Court Judgment and Findings enormous consequence.  AER Ex. 5, pages 42-52 (¶¶ 36, 41, 47, 48, 55, 56, 58, 62, 71, 75).

21

To consider the vacated and sealed State Court Judgment and Findings, the Bankruptcy Court had to admit them into evidence, which the Court did over the objection of Morabito.  AER Ex. 5, pages 42-43; Ex. 34; Ex. 24, pages 1185-87. The Bankruptcy Court legally erred in admitting the vacated State Court Judgment and Findings into evidence and relying upon them in entering judgment in favor of Herbst.

### A.   The Bankruptcy Court Erred in Giving The State Court Findings and Judgment Evidentiary Weight

Morabito did not dispute that the Bankruptcy Court could take judicial notice that the vacated and sealed State Court Findings and Judgment existed, but the Bankruptcy Court did not limit its judicial notice to the existence of the Findings and Judgment.  Instead, the Bankruptcy Court carefully reviewed the Findings and Judgment gave them great evidentiary weight and consequence. AER Ex. 5, pages 44-52 (¶¶ 41, 47, 48, 55, 56, 58, 62, 71, 75).

The Bankruptcy Court erred because a court cannot take judicial notice of the truth of findings of fact from another case.  *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003). Further, the contents are hearsay and inadmissible to prove the truth of any disputed statement.  *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004) ("A prior judgment is therefore hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment."); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (prior judgments are generally

inadmissible under FRE 403 because of the danger of the trier of fact placing undue weight on the opinion of a court).

The Bankruptcy Court's conclusion that summary judgment should be granted because Morabito's verification of the COJ was consistent with the vacated Findings is necessarily dependent on the Bankruptcy Court's conclusion that the vacated Findings were a true and credible statement of the underlying facts. But the Bankruptcy Court had no basis to conclude that the vacated Findings were a true and credible statement other than the Findings reflected the opinion of the State Court. As the Findings were both inadmissible hearsay under FRE 801 and unfairly prejudicial under FRE 403, the Bankruptcy Court legally erred in relying on the Findings.

### B.   The Bankruptcy Court Erred Because the State Court Findings Were Vacated

Separate from the State Court Findings being inadmissible hearsay, the Judgment and Findings had previously been vacated with prejudice and placed under seal. Vacatur prevents a judgment "from spawning any legal consequences" and a vacated judgment is "without force or effect." *Camreta v. Greene*, 563 U.S. 692, 713 (2011); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950); *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 838 (D.C. Cir. 1985); *Schlang v. Key Airlines*, 158 F.R.D. 666, 671 (D. Nev. 1994) ("The most significant cost associated with vacatur is the elimination of the judgment's preclusive effect.").

23

By relying on the vacated and sealed Findings to grant summary judgment, the Bankruptcy Court gave the vacated and sealed Findings a very real legal consequence and force and effect.  While the Bankruptcy Court claimed it was not giving the vacated Judgment and Findings preclusive effect, the Court refused to consider any evidence that was inconsistent with the vacated Judgment and Findings.  The Bankruptcy Court erred by giving the vacated Judgment and Findings legal consequence and effect.

## VI.

### THE BANKRUPCY COURT ERRED BY
### <u>HOLDING THE COJ CLAIM PRECLUSIVE</u>

The Bankruptcy Court held that the claim stipulated to in the COJ – fraud – is the same claim at issue in the nondischargeability proceeding – fraud. Therefore, the Bankruptcy Court held that the COJ is claim preclusive concerning whether the COJ is nondischargeable.  AER Ex. 5, pages 56-57.

The ruling is legal error, because the claim at issue in this proceeding is not fraud, but nondischargeability, and a prior judgment can *never* have claim preclusive effect for purposes of nondischargeability.

A fundamental element of claim preclusion is that the claim asserted in the second proceeding was actually litigated or could have been litigated in the first proceeding.  *Robertson v. Isomedix, Inc. (In re International Nutronics)*, 28 F.3d 965, 969 (9th Cir. 1994) ("Res judicata bars all grounds for recovery that could

have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action."); *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008) ("claim preclusion applies to all grounds of recovery that were or could have been brought in the first case").  If a claim could not have been asserted in the first proceeding, then the doctrine does not apply.  *George v. City of Morro Bay (In re George),* 318 B.R. 729 (B.A.P. 9th Cir. 2004).

Bankruptcy courts have exclusive jurisdiction to determine the nondischargeability of a claim under section 523(a)(2).  11 U.S.C. § 523(c)(1); *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1128 (9th Cir. 2012).  Because bankruptcy courts have exclusive jurisdiction, nondischargeability based on fraud cannot be raised in any proceeding other than a proceeding in the debtor's bankruptcy case.  *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir. 2001).

For this reason, the Supreme Court and other courts have made very clear that the doctrine of claim preclusion has no applicability in nondischargeability proceedings.  *Brown v. Felsen*, 442 U.S. 127, 133-139 (1979); *Archer v. Warner*, 538 U.S. 314 (2003); *Olsen v. Bloomfield Group, Inc. (In re Olsen)*, 2014 Bankr. LEXIS 5007 (B.A.P. 9th Cir. Dec. 11, 2014) ("it is well established that claim preclusion does not apply in a § 523(a) nondischargeability proceeding").

Herbst's claim against Morabito for nondischargeability was not and could not have been litigated in any prior proceeding. Accordingly, the doctrine of claim preclusion does not apply and the Bankruptcy Court erred.

## VII.

## THE BANKRUPTCY COURT ERRED BY HOLDING THE COJ ISSUE PRECLUSIVE

While claim preclusion does not apply in nondischargeability proceedings, issue preclusion does apply. *Grogan v. Garner*, 498 U.S. 279 (1991). The Bankruptcy Court held that the statements relating to fraud included in the COJ have issue preclusive effect. AER Ex. 5, pages 46-56. The conclusion was legal error.

Nevada law governs the application of preclusion in this proceeding. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). Four elements must be established for issue preclusion to apply: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008).

Under Nevada law, while a confession of judgment may have claim preclusive effect, it cannot have issue preclusive effect because the underlying

facts are not actually litigated.  *Howard v. Sandoval (In re Sandoval)*, 126 Nev. 136, 140 (2010) ("When a judgment is entered by confession, consent, or default, none of the issues is actually litigated, and therefore, the issues may be litigated in a subsequent action."); *Willerton v. Bassham by Welfare Div.*, 111 Nev. 10, 17 n.6 (1995) ("[P]rior stipulation-based judgments do have res judicata (claim preclusion) effect, but do not have collateral estoppel (issue preclusion) effect.").

Notwithstanding the result compelled by existing Nevada law, the Bankruptcy Court decided to make new Nevada law by holding that a confession of judgment can have issue preclusive effect if the confession of judgment is executed after a trial has occurred, the trial court entered findings which are vacated with prejudice and sealed, and the facts included in the confession of judgment are consistent with the vacated and sealed judgment.  AER Ex. 5, pages 41, 48-49.  The Bankruptcy Court cited no precedent or authority, in Nevada or any other jurisdiction, for its newly created exception to established Nevada law. The Bankruptcy Court's ruling was legally erroneous for two different reasons.

### A.   The Bankruptcy Court Erred Because the Fraud Statements in the COJ Were Not Litigated to a Final Judgment

Issue preclusion requires litigation of the fact at issue to a final judgment. The COJ is a final judgment, but not litigated.  To get around this insurmountable legal barrier under Nevada law, the Bankruptcy Court held it could separate the litigation and final judgment requirements, so that the vacated State Court

27

Judgment, which was the result of litigation but not a final judgment because it was vacated, satisfied the actual litigation requirement. AER Ex. 27, pages 1543-44; AER Ex. 5, pages 41, 42, 45, 51.

The Bankruptcy Court cited no authority or precedent, in Nevada or otherwise, that a consensual judgment can have issue preclusive effect because of a different litigation that did not result in a final judgment.  And certainly no authority where the different litigation concluded with a judgment vacated with prejudice.  By definition, a vacated judgment cannot have any preclusive effect. *Schlang v. Key Airlines*, 158 F.R.D. 666, 671 (D. Nev. 1994) ("The most significant cost associated with vacatur is the elimination of the judgment's preclusive effect.").

### B. The Bankruptcy Court Erred Because the Statements Relating to Fraud in the COJ Were Not Necessary to the Enforceability of the COJ

To have issue preclusive effect, a fact in a judgment must be "necessary" to the entry of the judgment.  If the fact is extraneous and not necessary, then the fact cannot have issue preclusive effect.  *Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994) (Nevada law requires that an issue must be "necessarily determined" in the prior proceeding to be issue preclusive); *Frei v. Goodsell*, 305 P.3d 70, 72 (Nev. 2013) ("Thus, for issue preclusion to apply in this case, the issue of whether Frei

28

and Goodsell had an attorney-client relationship must have been necessary for resolution of the trust action.").

Under NRS 17.100, a confession of judgment must contain the following:

> A statement in writing shall be made, signed by the defendant and verified by his oath, to the following effect:
>
> 1. It shall authorize the entry of judgment for a specified sum.
>
> 2. If it be money due, or to become due, it shall state concisely the facts out of which it arose, and shall show that the sum confessed therefor is justly due, or to become due.

In effect, NRS 17.100 requires nothing more than generalized allegations of a debt owed. *Coast to Coast Demolition & Crushing, Inc. v. Real Equity Pursuit, LLC*, 126 Nev. 97, 105 (2010) ("The documents recite that the debt is truly owed, and they are signed by Coast to Coast, initialed on each page, and authenticated. The 'statement' requirement in NRS 17.100 does not require more.").

Because NRS 17.100 requires nothing more than an admission that a debt is owed, all other statements contained in a confession are not necessary to the validity and enforceability of the confession.  Herbst included the statements relating to fraud in the COJ for purposes of nondischargeability and not enforceability.  AER Ex. 24, pages 1283-84.  Such statements are extraneous and analogous to dicta, which cannot have issue preclusive effect.  The Bankruptcy Court legally erred in finding the COJ issue preclusive under Nevada law.

## VIII.

### THE BANKRUPTCY COURT ERRONEOUSLY APPLIED THE SHAM AFFIDAVIT RULE TO FIND NO GENUINE DISPUTE AS TO ANY MATERIAL FACT

The evidence in the record consisted of (1) Morabito's verification of statements in the COJ that he committed fraud, and (2) Morabito's subsequent testimony under penalty of perjury, supported by extensive documentation, disavowing the statements in the COJ and denying that he had committed fraud.

In the absence of preclusion, Morabito's testimony created a genuine disputed fact that precluded summary adjudication and required an evidentiary trial to determine whether Morabito actually committed a fraud. To find Morabito's statements in the COJ true and his subsequent contradictory statements false would require a weighing of the evidence and a credibility determination, which is for trial and not summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The Bankruptcy Court was very aware that its preclusion rulings were unprecedented and inconsistent with Nevada law. To avoid having to give Morabito his day in court in the event the preclusion rulings were reversed on appeal, the Bankruptcy Court conjured a back-up plan. Citing the "sham affidavit doctrine," the Bankruptcy Court held that Morabito's testimony could be disregarded at summary judgment because the testimony was a "sham intended to

30

create disputed facts with his own inconsistent statements to defeat partial

summary judgment."   AER Ex. 5, page 45; Ex. 27, page 1541; Ex 25, page 1474.

The Bankruptcy Court's application of the sham affidavit doctrine to

disregard Morabito's testimony was erroneous and the Bankruptcy Court erred in

finding there was no genuine material fact in dispute.[8]

### A.   The Bankruptcy Court Erred Because the Morabito Testimony Did Not Contradict Prior Deposition Testimony in the Proceeding

The sham affidavit rule is a very narrow exception to the rule that a court

cannot weigh the evidence at summary judgment.  The rule provides that "a party

cannot create an issue of fact by an affidavit contradicting his prior deposition

testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

Because the rule is in tension with the principle that a trial court cannot make

---

[8] While the Amended Findings largely mimic the original Findings accompanying the grant of partial summary adjudication, the Amended Findings include an additional statement that the "evidence presented at the Trial established that Morabito engaged in conduct that satisfies the factual and legal basis for finding the debt to be nondischargeable pursuant to Section 523(a)(2)."  AER Ex. 5, pages 43-44.  The Amended Findings do not identify what "evidence" the Bankruptcy Court is referring to and instead refer the reader to the Memorandum Decision. The Memorandum Decision references Morabito's admission that his statements in the COJ were false (AER Ex. 3, pages 22-30), but that testimony is only relevant to the fourth cause of action (*i.e.*, the negotiation and execution of the Settlement Agreement and COJ), not the first and second causes of action (*i.e.*, the facts and circumstances relating to the ARSPA).  The "evidence presented at the Trial" was strictly circumscribed by the Bankruptcy Court to the fourth cause of action.  The Bankruptcy Court did not permit any testimony concerning the first and second causes of action.  AER Ex. 24, pages 1305-08

credibility determinations or weigh conflicting evidence at summary judgment, the rule must be "applied with caution." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

To be applicable, the affidavit must contradict the affiant's deposition testimony in the proceeding.  Testimony that contradicts earlier testimony that was given in another proceeding or other than in a deposition is not subject to the rule. *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 891 n.18 (B.A.P. 9th Cir. 2014) ("Of course, this appeal presents a conflict between Wank's two declarations, not a deposition, so the sham affidavit exception to the prohibition on credibility determinations in summary judgment does not apply."); *Reese v. Herbert,* 527 F.3d 1253, 1270 n.8 (11th Cir. 2008) ("we would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding"); *Malibu Textiles, Inc. v. Sentimental NY*, 2016 U.S. Dist. LEXIS 83688 n.19 (S.D.N.Y. 2016) (doctrine may not be used to credit "non-deposition testimony from another proceeding over deposition testimony in the instant proceeding."); *Olvera v. Sierra Nev. Coll.*, 2010 U.S. Dist. LEXIS 3386 *18 (D. Nev. Jan. 14, 2010) ("Defendants have not identified any deposition statement or other sworn testimony contrary to the statements in Plaintiff's affidavit. Accordingly, the court finds that Plaintiff's affidavit is not an attempt to create a 'sham issue of fact.'").

Morabito's testimony in opposition to summary judgment contradicted his verification of the COJ and not his deposition in this or any other proceeding, or any other testimony in this proceeding. The testimony was entirely consistent with his testimony given under oath in both the State Court Litigation and in his deposition given in this proceeding. AER Ex. 31, page 1595. By applying the sham affidavit rule in the absence of conflicting deposition testimony in this proceeding, the Bankruptcy Court legally erred.

### B. The Bankruptcy Court Erred Because the COJ Verification Was Not Sworn

The sham affidavit doctrine has no applicability where the later *sworn* testimony only contradicts earlier *unsworn* statements. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). "Sworn" means testimony under oath in a judicial proceeding. *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162 (7th Cir. 1995) (for the sham affidavit rule to apply, prior testimony must be "under oath in the context of judicial proceedings").

The Bankruptcy Court did not make a finding the COJ verification was a sworn statement and such finding would have been clearly erroneous. The record shows that the COJ verification was not a sworn statement.

33

### 1. The COJ Verification Was Not Sworn Because the Notary Did Not Inform The Debtor That His Statements Were an Oath

"[T]he mere signing of an affidavit before an officer does not constitute the act necessary to constitute an oath." *White v. State*, 102 Nev. 153, 156-57 (1986). To constitute an oath, the evidence must show that the defendant's "attention had been directed to the necessity of swearing to his statement." *Id*. at 157.

The verification language signed by Morabito, which language was drafted entirely by Herbst, does not include the words "under penalty of perjury." The notary that notarized the COJ verification did not place Morabito under oath or inform him that he would be subject to prosecution for perjury for any false statements in the COJ verification. AER Ex. 24, pages 1362-63. Accordingly, the COJ verification was not sworn testimony under oath.

### 2. The COJ Verification Was Not Sworn Because It Was Voluntary

The statements made by Morabito in the COJ verification were not made pursuant to a subpoena, notice of deposition, or other order or rule requiring the testimony in a judicial proceeding. Instead, the statements were made voluntarily in connection with the Settlement Agreement. Because the COJ verification was made voluntarily, the COJ verification was not an oath subject to penalty of perjury. *Licata v. State*, 99 Nev. 331, 332 (1983) ("A perjury charge may be

sustained only where the false statement was made in a judicial or other setting where an oath or affirmation is legally required.").

### 3. The COJ Verification Was Not Sworn Because the COJ Verification Was Effective Regardless of Whether it Was Under Oath or Not

"Where the statement is accorded the same legal recognition whether it is affirmed or not, it is not required by law and will not serve as a basis for invoking the perjury statute."  *White v. State*, 102 Nev. at 157-58.

The COJ verification was delivered to support a confession of judgment. NRS 17.100 provides that "a confession of judgment must contain . . . a statement in writing . . . signed by the defendant and verified by his oath."

While NRS 17.100 requires that the statement by the defendant be verified by his oath, the confession of judgment will be valid and enforceable even if the statement is not, in fact, verified by oath.  *Coast to Coast Demolition & Crushing, Inc. v. Real Equity Pursuit, LLC*, 126 Nev. 97, 104 (2010) ("a debtor cannot avoid an otherwise valid signed confession based on his failure to verify the statements he subscribed").

Because a confession of judgment is valid and enforceable regardless of whether the supporting statement is made under oath, the COJ verification was not an oath subject to perjury.

C.     **The Bankruptcy Court Erred Because There is no Factual Basis to Find That Morabito's Testimony Was Created Solely to Avoid Summary Judgment**

Mere inconsistency between earlier deposition testimony and a declaration submitted in opposition to summary judgment is insufficient for application of the sham affidavit doctrine. To disregard the testimony the trial court must make a factual finding that the contradiction is a factual sham submitted solely to create an issue of fact and avoid summary judgment. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).

The Bankruptcy Court did not make any finding that Morabito's disavowal of his statements in the COJ verification was an invention for the sole purpose of avoiding summary judgment. To the contrary, the Bankruptcy Court acknowledged that the Morabito Declaration was entirely consistent with Morabito's testimony in the State Court Litigation and all other testimony other than the COJ. AER Ex. 5, page 45 (¶ 47); Ex. 25, page 1488. The Morabito Declaration was supported by extensive documentation showing Morabito did not commit a fraud. AER Ex. 32. The Bankruptcy Court did not dispute Morabito's explanation why he signed the COJ verification even though it contained statements that were not true.

Instead of addressing the factual question of whether Morabito disavowed his prior verification solely to avoid summary judgment, the Bankruptcy Court

instead focused on whether Morabito should be entitled to contradict the prior

verification and have the opportunity to relitigate.  AER Ex. 25, pages 1486-88.

The Bankruptcy Court concluded that Morabito's explanations for his decision to

sign the COJ verification "do not entitle him to disavow facts that he verified," that

it is "unacceptable" for Morabito to contradict the COJ verification after breaching

his payment obligations under the Settlement Agreement, and "Morabito should

not realize benefit from his own duplicitous conduct" in verifying and then

disavowing the statements.  AER Ex. 5, page 46; Ex. 3, page 21.

While it is evident that the Bankruptcy Court has disdain for Morabito's

conduct, it was not the Bankruptcy Court's role to pass moral judgment.[9]  The

Bankruptcy Court erred in finding that Morabito's testimony was a sham in the

absence of any evidence that the testimony was invented to oppose summary

judgment.

---

[9] Whatever the Bankruptcy Court may have felt about Morabito, the Court ignored
that Morabito bargained hard for the State Court Judgment and Findings to be
vacated with prejudice precisely to reserve the right to litigate the
nondischargeability of the Herbst claim if he ever defaulted.  Herbst, a
sophisticated party, was well aware of the risks of agreeing that the Judgment and
Findings would be vacated with prejudice in exchange for a $2.5 million payment.

## IX.

## THE BANKRUPTCY COURT ERRED IN HOLDING THAT HERBST DID NOT CONCLUSIVELY ADMIT MORABITO DID NOT COMMIT FRAUD

The first and second causes of action in the Complaint alleged that Morabito committed fraud in connection with the ARSPA. After Morabito answered and alleged that his statements in the COJ were "false," Herbst filed the Amended Complaint adding an "alternative" cause of action alleging Morabito "knowingly made false stipulations and representations" when he executed the COJ. AER Ex. 40, page 2351.

It is self-evident that the first and second causes of action, and the fourth cause of action, are mutually exclusive. If Morabito committed fraud in connection with the ARSPA, then he did not commit fraud in connection with the COJ. If Morabito committed fraud in connection with the COJ, then he did not commit fraud in connection with the ARSPA.

A plaintiff is permitted to plead in the alternative, and inconsistent factual allegations are not treated as admissions for purposes of FRCP 12(b)(6). FRCP 8(d)(2); *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985).[10]

---

[10] The "safe harbor" for pleading in the alternative does not apply where the allegations supporting one cause of action are incorporated into the alternative cause of action. *Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29 (9th Cir. 2007). The allegations supporting the fourth cause of action were incorporated into the first and second causes of action. AER Ex. 40, pages 2347-48.

However, once the litigation proceeds beyond the pleading stage, factual allegations are treated as judicial admissions, and if a complaint is not amended prior to trial, the factual allegations in the complaint will be treated as *conclusive* judicial admissions.  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. . . . A statement in a complaint, answer or pretrial order is a judicial admission.").

After the Bankruptcy Court entered summary judgment in favor of Herbst on the first and second causes of action, Herbst had the option of requesting permission to dismiss the alternative fourth cause of action.  Instead, Herbst demanded and received a trial on the fourth cause of action.  Once the Bankruptcy Court conducted a trial on the fourth cause of action, (1) the Herbst allegation that Morabito did not commit fraud in connection with the ARPSA became a *conclusive* judicial admission that Morabito does not dispute, while (2) the Herbst allegation that the Debtor did commit fraud in connection with the ARPSA is contradicted by Herbst's conclusive judicial admission and disputed by Morabito under penalty of perjury.

Based upon this factual record, the Bankruptcy Court legally erred in finding that Morabito committed fraud in connection with the ARSPA.  Because Herbst's

allegations became *conclusive* judicial admissions, the Bankruptcy Court was

precluded from considering contradictory evidence. *Tillamook Country Smoker,*

*Inc. v. Tillamook County Creamery Ass'n,* 465 F.3d 1102, 1112 (9th Cir. 2006);

*AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1120 (5th Cir.

1991) ("An admission that is not withdrawn or amended cannot be rebutted by

contrary testimony or ignored by the district court simply because it finds the

evidence presented by the party against whom the admission operates more

credible.").

Moreover, even if the Bankruptcy Court could consider contradictory

evidence, the result would be the same.  While the COJ might be an admission that

Morabito committed fraud, that admission would be contradicted by Herbst's

admission that Morabito did not commit fraud.  The Bankruptcy Court would have

no basis to favor one admission over the other, so the evidence in the record would

be equally balanced, and it is axiomatic that where the evidence is equally

balanced, judgment must be entered against the party with the burden of proof.

*Radius v. Travelers Ins. Co.,* 87 F.2d 412, 415 (9th Cir. 1937) ("If the evidence

was equally balanced on the question of suicide, it is apparent that the appellant

failed to establish by a preponderance of the evidence that the death was caused by

accidental means.").

In the Memorandum Decision, the Bankruptcy Court concluded that Herbst's allegation that Morabito's statements in the COJ were "false" was not an admission by Herbst that Morabito's statements in the COJ were "false."  AER Ex. 3, pages 20-21.  The Bankruptcy Court provided no meaningful explanation for its conclusion except that "Morabito should not realize a benefit from his own duplicitous conduct."  AER Ex. 3, page 21.  It is evident that the Bankruptcy Court reached a moral judgment that Morabito did not deserve a discharge, but the Bankruptcy Court's moral feelings are not a basis for incorrect legal rulings.[11]

## A.    The Bankruptcy Court Erred in Not Ruling on the Fourth Cause of Action

The Bankruptcy Court attempted to evade the legal consequence of the Herbst conclusive admissions by refusing to rule on the merits of the fourth cause of action.  AER Ex. 2.  If the Bankruptcy Court had ruled on the merits of the fourth cause of action, the Bankruptcy Court would have been in a box, because the first and second causes of action were dependent on the COJ verification being

---

[11] In the Memorandum Decision the Bankruptcy Court goes to great length defending its decision not to reconsider the interlocutory order granting partially summary adjudication on the first and second causes of action.  AER Ex. 3, pages 16-20.  However, the entire discussion is dicta and irrelevant, because the Bankruptcy Court replaced the interlocutory ruling with a final judgment, so the error at this stage of the litigation is not that the Bankruptcy Court abused its discretion in refusing to reconsider an interlocutory ruling, but that the final judgment is legally erroneous.

true, while the fourth cause of action was dependent on the COJ verification being false.

If Herbst had requested dismissal of the fourth cause of action after the Bankruptcy Court granted partial summary adjudication on the first and second causes of action, the Bankruptcy Court may have had the discretion to grant the dismissal and avoid the box. However, Herbst instead demanded and received a trial. The Bankruptcy Court's refusal to rule on the fourth cause of action was error.[12]

---

[12] In the Memorandum Decision the Bankruptcy Court concluded that Herbst reasonably relied on Morabito's verification of the statements in the COJ in entering into the Settlement Agreement. AER Ex. 3, pages 21, 24, 28. The entire discussion is dicta because the first and second causes of action are based on the ARSPA and the Court ruled the fourth cause of action was unnecessary. In any event, to summarize the fourth cause of action, Herbst prepared the COJ that contained false statements, demanded that Morabito sign the COJ as part of the Settlement Agreement, and now argue that Morabito committed a fraud by signing the COJ that Herbst required Morabito to sign. There is not a shred of evidence in the record that evidences Herbst conditioned the Settlement Agreement on Morabito actually believing as true the false statements Herbst included in the COJ or that Herbst reasonably believed Morabito believed the statements were true. AER Ex. 20, pages 528-30. Furthermore, any argument that Morabito committed fraud by falsely promising never to challenge the nondischargeability of the COJ is entirely frivolous. *Hayhoe v. Cole (in Re Cole)*, 226 B.R. 647, 655 (B.A.P. 9th Cir. Cal. 1998). The Bankruptcy Court also found, in dicta, that Morabito "had assets in excess of $85,000,000.00 at all relevant times," which would be necessary to show, for purposes of the fourth cause of action, that entry into the COJ proximately caused Herbst harm. AER Ex. 3, page 30. The Bankruptcy Court did not refer to any fact in the record supporting the finding. There is not a shred of evidence that Morabito negotiated a settlement that reduced his liability from $149 million to $20 million, paid $8.5 million to reduce his liability to $12 million, and then defaulted, triggering an $85 million claim and suffering the shame and

## X.

## THE BANKRUPTCY COURT ERRED IN GIVING EFFECT TO A PREPETITION WAIVER OF NONDISCHARGEABILITY NOT REVIEWED AND APPROVED BY A COURT

The COJ does not have issue preclusive effect under Nevada law. However, even if the COJ had preclusive effect under Nevada law, federal bankruptcy policy would override the preclusive effect.

As a matter of federal bankruptcy policy, any pre-bankruptcy waiver of the bankruptcy discharge is null and void. *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1026 (9th Cir. 2012).

A difficult conceptual problem arises if the debtor, instead of explicitly waiving the discharge, stipulates to facts that will result in a nondischargeable debt. While stipulated facts do not have issue preclusive effect because the facts are not litigated, some courts have held that stipulated facts may be given preclusive effect where the specific facts and circumstances evidence an intention to be bound. *See, e.g., Sekaquaptewa v. MacDonald*, 575 F.2d 239, 247 (9th Cir. 1978).

Morabito is unaware of any Nevada case holding that statements in a confession of judgment can have issue preclusive effect because the parties

---

humiliation of this bankruptcy case, all while secretly having $85 million that could be used to pay the $12 million balance.

intended to be bound.  However, if this Court concludes that a confession of judgment can have issue preclusive effect under Nevada law based on the parties' intention, the difficult question is the following:  if the parties stipulate to facts that will result in a nondischargeable debt, but it is evident from the facts and circumstances that the creditor insisted on the stipulated facts precisely to ensure the debt would be nondischargeable in a subsequent bankruptcy, does the stipulation violate the federal bankruptcy policy against pre-bankruptcy waivers of the discharge?

### A.    In re Wank

The question was addressed by the Ninth Circuit BAP in *Wank v. Gordon (In re Wank)*, 505 B.R. 878 (B.A.P. 9th Cir. 2014).  As part of settlement of litigation, the creditor required the debtor to (1) stipulate that the claim was nondischargeable, and (2) execute a declaration admitting to fraud that would be used in the event the debtor defaulted and filed for bankruptcy.

The BAP held, as a matter of federal bankruptcy policy, the debtor was entitled to disavow the declaration and dispute any fraud allegation in a later nondischargeability proceeding.  The facts and circumstances evidenced that the fraud admissions in the declaration were not included to evidence the debt, but instead solely to render the claim nondischargeable in a subsequent bankruptcy case.  *Id*. at 889-90.  Because of these facts and circumstances, the admissions of

fraud "must, at minimum, be viewed with great skepticism" and "the reliability of the factual statements that follow are potentially tainted by the Appellee's motives. The document was solely intended to ensure that Wank could not obtain effective relief in bankruptcy." *Id.*

*Wank* is directly on point. The stipulated fraud admissions in the COJ, which were never reviewed and approved by the State Court, were included in the COJ for the sole purpose of rendering the COJ nondischargeable in a bankruptcy case. AER Ex. 24, pages 1283-84; AER Ex. 32, pages 1911-1912, 1924; Ex. 37, pages 2263, 2270, 2275-83.

The Bankruptcy Court was very aware that *Wank* granted Morabito the right to a trial on the fraud claims. Because the Bankruptcy Court made clear it would never grant Morabito that trial, the Bankruptcy Court was required to come up with a rationale to distinguish *Wank*. Instead of addressing the central holding of *Wank* that stipulated fraud admissions are tainted if included solely for nondischargeability as opposed to enforceability, the Court distinguished *Wank* by identifying various ancillary factual distinctions, such as the declaration in *Wank* was only to be used in a bankruptcy case while the COJ was to be filed in the State Court after a default, and that the *Wank* declaration was a separate document from the stipulated judgment while the Morabito admissions were included in the COJ.

AER Ex. 5, pages 49-52.  The Bankruptcy Court provided no plausible explanation

why the ancillary factual distinctions have any relevance to the central issue.

### B.      In re Johnson

All briefing and testimony in this proceeding was completed in May 2017,

but the Bankruptcy Court did not enter the Judgments until April 2018. Two weeks

before the Judgments were entered, the BAP issued an opinion distinguishing

*Wank*.  The Bankruptcy Court included a discussion of that new case in the

Amended Findings and Memorandum Decision.  AER Ex. 5, pages 52-56; AER

Ex. 4, pages 24-28.[13]

Unlike *Wank*, which is a published opinion, the new case, *In re Johnson*,

2018 Bankr. LEXIS 1158 (B.A.P. 9th Cir. Apr. 16, 2018), is not for publication.

Whatever the merits and precedential value of *Johnson*, the Bankruptcy Court

ignored the crucial distinction between *Johnson* and this case and *Wank*, which

was the active participation of the trial court in *Johnson*.  In *Johnson*, the fraud

admissions and the likely bankruptcy effect of the fraud admissions were put on

the record and the debtors represented in open court to the trial court that they

understood the terms of the settlement and were willing to be bound by the terms.

---

[13] It is not pure speculation that the Bankruptcy Court was aware that the *Johnson* opinion was forthcoming and timed the Judgments accordingly.  The Bankruptcy Court stated on the record that the Court conferred with the BAP judges who issued the *Wank* opinion to discuss the applicability of *Wank* to the current case. AER Ex. 25, page 1484.

Furthermore, the trial court reviewed and entered the stipulated judgment after default on the settlement agreement.

Comparatively, in this case and *Wank*, the fraud admissions were buried in side agreements that were never reviewed by the trial court. Morabito never admitted to fraud to the State Court in open court. The COJ was filed by Herbst without any review or involvement of the State Court. The involvement of the trial court is critical to the analysis. The bankruptcy court in *Johnson*, upheld by the BAP, specifically found that *Wank* was distinguishable because the debtors' stipulation to the facts "was relied upon by the state court when it entered the judgment." *In re Johnson*, 2018 Bankr. LEXIS 1158 *19.

The COJ does not have issue preclusive effect under Nevada law. But if this Court finds that the COJ does have issue preclusive effect under Nevada law because of the parties' intentions, the Court should conclude that federal bankruptcy policy provides Morabito the right to disavow the fraud admissions and have his day in court.

## XI.

### THE BANKRUPTCY COURT ERRED IN CONCLUDING THE $85 MILLION COJ WAS NOT AN UNENFORCEABLE PENALTY FOR DEFAULT ON THE $20 MILLION SETTLEMENT OBLIGATION

Pursuant to the Settlement Agreement, Morabito agreed to make payments and assume liabilities in the approximate amount of $20 million. In order to

induce Morabito to make those payments, Herbst required Morabito to execute the

$85 million COJ.  Pursuant to the Settlement Agreement, Herbst could not file the

COJ unless and until Morabito defaulted on the Settlement Agreement.  AER Ex.

32, page 1924.

A liquidated damages clause is appropriate when contractual damages are

uncertain or immeasurable, but void and unenforceable if the stipulated damage

amount has no reasonable relation to the underlying contractual obligation and is

simply a penalty intended to compel performance.  *Khan v. Bakhsh*, 306 P.3d 411

(Nev. 2013); *Mason v. Fakhimi*, 109 Nev. 1153 (1993).  The doctrine is applicable

to a consent judgment filed after default under a settlement agreement.  *Dye v.

Sachs (In re Flashcom, Inc.),* 2014 Bankr. LEXIS 4215 (B.A.P. 9th Cir. 2014);

*Purcell v. Schweitzer*, 224 Cal. App. 4th 969 (2014).

The Bankruptcy Court concluded that the increase of the Herbst claim from

$20 million to $85 million as a result of a default was not a penalty because the

Settlement Agreement was "a benefit to Morabito."  AER Ex. 5, page 57.  The

Bankruptcy Court also concluded that an $85 million claim following the default

on a $20 million claim was "a reasonable attempt to ascertain damages under the

Settlement Agreement as the $85,000,000 was tied to the $85,000,000

compensatory award of the State Court."  AER Ex. 5, page 57.

The Bankruptcy Court's justification of the $85 million default claim based on the vacated State Court Judgment and Findings is legal error.  For purposes of determining whether a liquidated damages number is a penalty, the liquidated damages amount is measured against the obligation arising from the settlement agreement and not the underlying complaint or judgment.  *In re Flashcom, Inc.,* 2014 Bankr. LEXIS 4215 *27; *Purcell v. Schweitzer*, 224 Cal. App. 4th at 974.

The COJ was intended by Herbst, and understood by Morabito, as a hammer that would be used only if Morabito breached the Settlement Agreement.  AER Ex. 31, page 1595.  Under these circumstances, the COJ is an unenforceable penalty intended to compel performance.  *Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.,* 2014 U.S. Dist. LEXIS 564 (N.D. Cal. Jan. 3, 2014) (confession of judgment executed in connection with settlement agreement was an unenforceable penalty and defendant was not barred from challenging the confession of judgment amount).

## XII.

### THE BANKUPTCY COURT ERRED IN FINDING THAT THE ENTIRETY OF THE $85 MILLION CLAIM WAS PROXIMATELY CAUSED BY FRAUD

An element of section 523(a)(2) is that the claim must be proximately caused by the fraud.  *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219 (9th Cir. 2010).  Like all elements of section 523(a)(2), Herbst had the burden of proof.

49

The original counter-claim filed by Herbst in the State Court Litigation alleged claims for breach of contract, negligent misrepresentation, and fraud in the inducement, and did not allocate the alleged damages among the various claims. AER Ex. 32, pages 2005-2018.  In fact, the counter-claim only alleged that Herbst was fraudulently induced to pay $3,165,690 to close the transaction.  AER Ex. 32, pages 2011-14.

The COJ does not contain any facts that show an actual or proximate connection between the alleged fraud that induced a payment of less than $3.2 million and the confessed damages of $85 million, nor does the COJ even contain an admission that the $85 million amount was actually or proximately caused by the alleged fraud.  In fact, there is no breakdown or demonstration in the COJ that a single dollar was attributable to fraud as opposed to breach of contract or other actual or proximate cause of the alleged damages.

In the absence of a preclusive finding that a specific portion of the $85 million judgment amount is solely attributable to and actually and proximately caused by Morabito's fraud, the Bankruptcy Court legally erred in finding the Herbst $85 million claim nondischargeable.  *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219 (9th Cir. 2010); *Staten v. Armstrong (In re Armstrong)*, 1996 U.S. App. LEXIS 21996 (9th Cir. Cal. Aug. 23, 1996); *Phan v. Nguyen (In re Phan)*, 2014 Bankr. LEXIS 727 (B.A.P. 9th Cir. Feb. 24, 2014).

# XIII.

## CONCLUSION AND REQUEST FOR RELIEF

Early in this bankruptcy case the Bankruptcy Court concluded that Morabito did not deserve a discharge.  Once the Bankruptcy Court reached that conclusion, the result in this proceeding was ordained.  The Bankruptcy Court contorted and misapplied applicable law to reach the result it believed just.  It is now up to this Court to correctly apply the law and ensure that Morabito receives the procedural and substantive fairness he was denied by the Bankruptcy Court.


DATED:  July 8, 2018             SHEMANOLAW
1801 Century Park East, Suite 1600
Los Angeles, CA  90067
Telephone: (310) 492-5033

                                      and

ROBISON SHARP SULLIVAN BRUST
71 Washington Street
Reno, Nevada 89503
Telephone: (775) 329-3151


By:  /s/ David B. Shemano
           David B. Shemano, Esq.
           Frank C. Gilmore, Esq.

Attorneys for Paul A. Morabito and
Consolidated Nevada Corporation

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 28(a)(11), I certify that this

brief contains 11,741 words, which meets the type-volume limitation stated in

Federal Rule of Appellate Procedure 32(a)(7).


DATED:  July 8, 2018                         SHEMANOLAW
                                             1801 Century Park East, Suite 1600
                                             Los Angeles, CA  90067
                                             Telephone: (310) 492-5033

                                                    and

                                             ROBISON SHARP SULLIVAN BRUST
                                             71 Washington Street
                                             Reno, Nevada 89503
                                             Telephone: (775) 329-3151


                                             By:   /s/ David B. Shemano
                                                    David B. Shemano, Esq.
                                                    Frank C. Gilmore, Esq.

                                             Attorneys for Paul A. Morabito and
                                             Consolidated Nevada Corporation

## **CERTIFICATE OF SERVICE**

I certify that on July 8, 2018, I electronically filed the foregoing with the

Clerk of the Court for the District of Nevada by using the CM/EFC system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the CM/ECF system.


By:  /s/ David B. Shemano