UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| In re: | Case No. 3:18-cv-00221-MMD |
| PAUL A. MORABITO, | ORDER |
| Debtor. | |

JH, INC., *et al.*,

                          Plaintiffs,

     v.

PAUL A. MORABITO.,

                          Defendant.

PAUL A. MORABITO,

                          Appellant,

     v.

JH, INC., *et al.*,

                          Appellees.

## I.    SUMMARY

Appellant Paul A. Morabito appeals the United States Bankruptcy Court for the District of Nevada's ("Bankruptcy Court") April 30, 2018 Judgment on the First and Second Causes of Action and Judgment Re: Fourth Cause of Action ("Order").  (ECF Nos. 1, 9.) The Order primarily found that a debt Appellant owed Appellees was nondischargeable where the allegation of fraud was based upon statements included in a Confession of Judgment ("COJ") entered into to settle a state court case in which the state court found Appellant committed fraud, even though Appellant had the applicable judgment vacated

as part of the settlement.[1] (*Id.*) Appellees also cross-appeal the portion of the Bankruptcy Court's Order denying them relief on their fourth cause of action. (ECF No. 11 at 54-55.) Further, Appellees' motion to strike certain exhibits and motion to substitute parties are also before the Court.[2] (ECF Nos. 13, 20.) For the following reasons, the Court affirms the Bankruptcy Court's Order. As also explained below, the Court will grant the motion to strike (ECF No. 13) and the motion to substitute parties (ECF No. 20).

## II.    PRELIMINARY MATTERS

Before addressing the merits of this appeal, the Court first resolves Appellees' motion to strike (ECF No. 13) and motion to substitute parties (ECF No. 20).

### A.    Motion to Strike

Appellees filed a motion to strike two exhibits attached to Appellant's opening brief, along with the portion of the opening brief that relies on those exhibits. (ECF No. 13 (moving to strike ECF Nos. 9 at 27-29, 10-44, 10-45).) Because these exhibits and portion of Appellant's opening brief were not considered by the Bankruptcy Court at the time it made the decisions relevant to this appeal, the Court will grant the motion and direct the Clerk of Court to strike those exhibits, along with the corresponding portion of Appellant's opening brief.

The Court is persuaded by Appellees' argument that these exhibits were created after the motions leading to the decisions on appeal here were fully briefed, and thus they do not properly constitute part of the record on appeal. (*See* ECF Nos. 10-3 at 3-5, 10-5 at 3-5 (declining to mention documents that appear to be the exhibits Appellees now move to strike).) *See also* Fed. R. App. P. 10(a); *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers submitted to the district court after the ruling that is challenged on appeal should be stricken from the record on appeal."). These exhibits—

---

[1]The Court has reviewed Appellant's opening brief (ECF No. 9), Appellees' answering brief (ECF No. 11), and Appellant's reply brief (ECF No. 15).

[2]The Court has also reviewed the applicable responses and replies. (ECF Nos. 16, 18.)

ECF Nos. 10-44, 10-45—will therefore be stricken. Further, the portion of Appellant's brief that relies on them—ECF No. 9 at 27-29—will also be stricken. *See Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002) (striking portion of opening brief that relied on exhibits stricken by the court as not properly part of the record).

Conversely, the Court is not persuaded by Appellant's contention that the Court may take judicial notice of these exhibits (ECF No. 16 at 2-3)—because their contents are subject to reasonable dispute. *See* Fed. R. Evid. 201(b) (providing that only facts not subject to reasonable dispute may be judicially noticed). The exhibits that Appellees seek to strike attempt to introduce a new theory based on allegedly newly-discovered facts that it was Appellees, rather than Appellant, who committed fraud. That contention goes to the heart of the dispute between the parties, and this new theory has not been established such that it is not subject to reasonable dispute. Further, this newly-discovered fraud theory was not before the Bankruptcy Court as relevant to the decisions on appeal here, and thus is not properly part of this appeal.

In addition, the Court declines to exercise its inherent discretion to supplement the record with these exhibits. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) ("Save in unusual circumstances, we consider only the district court record on appeal."). Rather than attempt to examine and rule on the entire, sprawling dispute between the parties, the Court will concentrate its review on the issues actually on appeal here. The Court will thus disregard the challenged exhibits and briefing (ECF Nos. 9 at 27-29, 10-44, 10-45) in deciding this appeal, and accordingly will not further discuss them below.

## B.    Motion to Substitute Parties

Unfortunately, Appellee Jerry Herbst ("Herbst) passed away. (ECF No. 19 (suggestion of death).) Following his death, Appellees moved to substitute Maryanna Herbst (his wife), as trustee of the Herbst Family Trust dated December 17, 2002, in his place. (ECF No. 20 (motion to substitute).) Appellant's deadline to file any response to this motion has passed, and he has filed no response. Appellees have complied with the

procedural requirements for substitution here. *See* Fed. R. App. P. 43; *see also* Fed. R. Civ. P. 25(a). Accordingly, the Court will grant Appellees' motion to substitute.

## III.    BACKGROUND

The Court summarizes only the facts relevant to this appeal. Corporate entities controlled by Appellant sold a chain of convenience stores and related assets to corporate entities controlled by Herbst. (ECF Nos. 9 at 16 n.2; 11 at 10.) This sale was governed by an amended and restated stock purchase agreement ("ARSPA"). (ECF No. 9 at 16.) The ARSPA required that Appellant submit a working capital estimate to Herbst, which would determine the amount of cash Herbst would have to pay Appellant at closing. (*Id.* at 17.) Herbst thought the working capital estimate Appellant submitted was much too low. (*Id.*) Thus, Herbst refused to pay Appellant additional money. (*Id.*)

Appellant filed suit against Herbst in state court to compel him to pay money Appellant believed he was owed under the ARSPA, and Herbst counterclaimed, alleging, among other things, that Appellant's low working capital estimate was the result of Appellant's fraud. (*Id.* at 17-18; *see also* ECF No. 11 at 11.) That case went to trial. (ECF Nos. 9 at 18, 11 at 11.)

Following the trial, the trial court entered a written order finding that the low working capital estimate was a result of Appellant's fraud, and that Appellant had committed fraud because the ARSPA set up an arrangement making Appellant "Construction Manager" of certain projects, which Appellees had to pay him for, but Appellant had no intention of ever serving as "Construction Manager" or doing anything that might entitle him to that money. (ECF Nos. 9 at 18-19, 11 at 11-16.)  The trial court awarded Appellees approximately $150 million in damages, of which approximately $85 million were compensatory damages for Appellant's fraud in the inducement—inducing Appellees to enter into the transaction to buy the company. (ECF No. 11 at 15-16.)

4

Both parties filed appeals and cross-appeals of this judgment. (ECF Nos. 9 at 19, 11 at 16.) While these appeals were pending, the parties participated in mediation, and subsequently agreed to settle their dispute. (ECF No. 9 at 19-20, 11 at 16.)

The settlement agreement had several components. First, both parties dismissed their appeals. Second, Appellant agreed to pay Appellees some money and assume some of their liabilities. Third, Appellant agreed to indemnify and hold harmless Appellees in certain legal proceedings, and sell a property Appellant owned in Reno for Appellee's benefit. Fourth, the parties agreed—following the state court's approval—to have the state court judgment vacated and placed under seal. Fifth, Appellant agreed to execute the COJ in the amount of $85 million that Appellees could file with the state court (and thus make enforceable) without prior notice to Appellant, in the event he defaulted on his payment obligations under the settlement agreement. As relevant here, Appellees basically copied-and-pasted the portions of the state court's written order following trial finding that Appellant committed fraud into the COJ. Further, the COJ also stated that it would not be dischargeable in the event Appellant filed for bankruptcy.[3] (ECF Nos. 9 at 19-21, 11 at 16-17; *see also* ECF No. 11 at 18-22.)

Appellant defaulted on his obligations under the settlement agreement when he failed to make a required $4 million payment on time. (ECF Nos. 9 at 22, 11 at 17.) Appellant then asked Appellees to hold off on enforcing their rights under the settlement agreement to give him more time to come up with the money. (ECF No. 11 at 17.) Appellees agreed, and the parties entered into a forbearance agreement. (*Id.*) But then Appellant also defaulted on the forbearance agreement. (*Id.*)

After Appellant defaulted on the forbearance agreement, Appellees filed the COJ in state court. (ECF No. 11 at 18.) The clerk of the state court entered the judgment, and the state court found the COJ complied with applicable state law. (*Id.*) The Nevada

---

[3]Apparently, Appellant was concerned about the COJ at the time he signed it, but he never told Herbst or the other Appellees about his concerns. (ECF No. 9 at 21.)

Supreme Court denied Appellant's challenges to the COJ, and his time to otherwise appeal it expired. (*Id.*)

Shortly thereafter, Appellees filed an involuntary bankruptcy petition against Appellant. (ECF Nos. 9 at 22, 11 at 22.) As most relevant here, Appellees also filed a complaint against Appellant in Bankruptcy Court seeking to establish that the $85 million COJ was nondischargeable (the "Nondischarge Proceeding"). (ECF Nos. 9 at 22, 11 at 23.) The Nondischarge Proceeding led to this appeal.

Appellant filed an answer in the Nondischarge Proceeding stating that all of the statements he agreed to in the COJ relating to how he committed fraud (which, again, mirrored the state court's written decision) were false, and he knew they were false at the time he certified they were all true. (ECF Nos. 9 at 22-23, 11 at 24.) In response to this answer, Appellees amended their complaint to include a fourth cause of action seeking—in the alternative event that they failed on their first and second causes of action based on the COJ—the difference between the approximately $150 million state court judgment they won and the $85 million COJ. (ECF No. 9 at 23, 11 at 24.) Appellees apparently amended their complaint on the theory that, if Appellant had lied in the COJ by signing onto untrue statements, he had fraudulently induced them to allow their state court judgment to be vacated in exchange for owing a lesser amount under the COJ. (ECF No. 9 at 23, 11 at 24.) Appellant filed another answer in response to that amended complaint containing similar statements as his first answer. (ECF No. 9 at 23, 11 at 24.)

Appellees first filed a motion for partial summary judgment on their first through third causes of action, arguing that the COJ was nondischargeable because Appellant affirmed in the COJ various facts establishing that he had committed fraud, and Appellees had both reasonably relied on, and were harmed by, his fraudulent misrepresentations. (ECF No. 11 at 24-25.) Appellant filed an opposition, to which he attached a declaration disavowing his statements in the COJ ("Appellant's Declaration"). (ECF No. 9 at 24.)

The Bankruptcy Court granted Appellees' motion for partial summary judgment as to their first and second causes of action, finding that the COJ was both claim and issue preclusive that Appellant committed fraud—and therefore that the COJ was nondischargeable because it was a debt incurred as a result of fraud. (ECF Nos. 9 at 24, 11 at 25.) In granting summary judgment to Appellees, the Bankruptcy Court discounted Appellant's Declaration under the sham affidavit doctrine. (ECF No. 9 at 24.) Further, the Bankruptcy Court later declined to reconsider its decision or amend its judgment on Appellees' first and second cause of action. (ECF No. 10-3.) However, the Bankruptcy Court granted summary judgment in Appellant's favor on Appellees' third cause of action, finding that a stipulation in the COJ waiving the COJ's discharge in the event of Appellant's bankruptcy was an unenforceable pre-bankruptcy waiver of the discharge. (ECF No. 9 at 25.) The Bankruptcy Court severed the unenforceable discharge waiver from the rest of the COJ. (ECF No. 10-5 at 20.) Thus, the Bankruptcy Court granted judgment to Appellees on their first and second cause of action. (ECF No. 10-2.)

Appellees then elected to proceed to trial on their fourth cause of action, which argued in the alternative from their first and second causes of action that Appellant committed fraud when he signed the COJ even though he thought the factual statements included in it were not true. Following a bench trial, the Bankruptcy Court found that, "[g]iven the Court's granting a final judgment in favor of the [Appellees] on the First and Second causes of action in their Amended Complaint, the relief sought alternatively by the [Appellees] in their Fourth Cause of Action is not necessary, therefore the Court finds in favor of [Appellant]." (ECF No. 10-4 at 3.)

Appellant appeals the Bankruptcy Court's decisions with respect to the first and second causes of action, and Appellees cross-appeal the Bankruptcy Court's decision with respect to the fourth cause of action. Appellant argues that the Bankruptcy Court should neither have given issue or claim preclusive effect to the COJ, nor should it have disregarded Appellant's Declaration under the sham affidavit doctrine. (ECF No. 9.)

Appellees urge affirmance of the Bankruptcy Court's decision that the COJ is nondischargeable, and cross appeal that their fourth cause of action was not merely in the alternative and therefore unnecessary—they believe they are additionally entitled to approximately $65 million, the difference between the COJ and the judgment they won in state court. (ECF No. 11.)

## IV.    LEGAL STANDARD

A bankruptcy court's conclusions of law are reviewed de novo, "including its interpretation of the Bankruptcy Code," and its factual findings are reviewed for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *In re Salazar,* 430 F.3d 992, 994 (9th Cir. 2005). The bankruptcy court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the bankruptcy court made a mistake. *In re Rains*, 428 F.3d at 900. "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re Brotby*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003). In reviewing a bankruptcy court's decision, this Court ignores harmless errors. *In re Mbunda*, 484 B.R. 344, 355 (B.A.P. 9th Cir. 2012). The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

The Bankruptcy Court's decision finding Appellant's $85 million debt based on the COJ nondischargeable is subject to *de novo* review. *See In re Plyam*, 530 B.R. 456, 461 (B.A.P. 9th Cir. 2015). As specifically regards the key issue before the Court on this appeal, the Bankruptcy Court's determination that issue preclusion was available is subject to *de novo* review, but its application of the issue preclusion doctrine to the facts of this case is reviewed for an abuse of discretion. *See id.* The Court also reviews the Bankruptcy Court's invocation of the sham affidavit rule for abuse of discretion. *See Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2012). "A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or

8

if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Plyam*, 530 B.R. at 461-62.

## V.    DISCUSSION

The Court first addresses Appellant's appeal of the Bankruptcy Court's Order with respect to the first and second causes of action, finding that the COJ is nondischargeable, and then addresses Appellees' cross-appeal with respect to the fourth cause of action.

### A.    Appellant's Appeal

Appellant raised many arguments in his appeal. (ECF No. 9 at 30-62.) As many of them are specious, the Court only addresses herein the arguments that are dispositive of this appeal. The Court finds that the Bankruptcy Court properly applied the sham affidavit doctrine, and did not err in finding the COJ nondischargeable because it was entitled to issue preclusive effect. Thus, the Court will affirm the Bankruptcy Court's Order with respect to the first and second causes of action.

### 1.    Sham Affidavit Doctrine

The Bankruptcy Court invoked the sham affidavit doctrine in order to discount Appellant's Declaration. (ECF No. 10-5 at 13.) Appellant contends this was improper because the sham affidavit doctrine may only be used when an affidavit contradicts earlier deposition testimony. (ECF No. 9 at 39-42.) Appellees counter that the Bankruptcy Court did not abuse its discretion in invoking the sham affidavit doctrine under the unique circumstances of this case, and the sham affidavit doctrine is not exclusively limited to a later-filed declaration that contradicts previous deposition testimony. (ECF No. 11 at 42-43.) As explained below, the Court agrees with Appellees.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager*, 693 F.3d at 1080 (citation and internal quotation marks omitted). This doctrine is, indeed, normally used in the context of an affidavit that contradicts prior deposition testimony, and should be applied with caution "because it is in tension with the principle that the court is not to make

credibility determinations when granting or denying summary judgment." *Id.* (citations omitted). "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.*

The Bankruptcy Court applied the sham affidavit rule to credit the COJ over the later-filed declaration. The Court finds that the Bankruptcy Court complied with the requirements of the sham affidavit rule, and did not abuse its discretion in invoking it under the unique circumstances of this case. *See Yeager*, 693 F.3d at 1079 (stating that applicable standard of review is abuse of discretion).

Regarding the Bankruptcy Court's technical compliance with the sham affidavit rule, it made a specific factual finding that Appellant's Declaration was a sham. (ECF No. 10-5 at 13.) The Bankruptcy Court also explained the clear and unambiguous contradiction between the COJ and the later-filed declaration. (*Id.* at 13-14.) There is no dispute that Appellant's statements in Appellant's Declaration squarely contradicted the factual content of the COJ. As the Bankruptcy Court explained, Appellant never contested the truth of the statements establishing his fraud in the COJ until after he defaulted on two agreements with Appellees, and they, as was their right under the settlement agreement, moved to enforce the COJ. "It was only after those events and the commencement of this bankruptcy case that Morabito [Appellant] sought to disavow the facts he stipulated to and affirmed. The [Bankruptcy] Court finds that to be unacceptable and a sham." (*Id.* at 14.) The Bankruptcy Court also noted the unusual circumstances here allowing it to draw the inference that the later filed declaration was a sham: the statements in the COJ Appellant sought to disavow in his declaration were basically copied-and-pasted from the vacated state court decision, meaning those statements as to Appellant's fraud were established by a neutral arbiter after several years of litigation and a multi-week bench trial. (*Id.* at 13.)

10

Thus, the Bankruptcy Court found that statements in the later-filed, self-serving[4] declaration were entitled to less weight than the COJ.

Even though the Bankruptcy Court applied the sham affidavit rule beyond deposition testimony, it did not abuse its discretion in doing so under the unique circumstances of this case. Indeed, the same principle that supports application of the sham affidavit doctrine to deposition testimony applies to statements made in a confession of judgment. Statements made in a confession of judgment to be filed with a court in the event of default are a party's stipulation that the statements are true and must be given with candor, just like deposition testimony given under oath. A party cannot represent one thing to a court to avoid the consequences of a court ruling and then file an affidavit in a later proceeding disavowing his representation in the same way that a party cannot offer a statement that contradicts his earlier deposition testimony.

Because the Court finds the Bankruptcy Court did not abuse its discretion in invoking the sham affidavit rule, the Court need not, and does not, address any other purported issue with the Bankruptcy Court's decision not to credit Appellant's Declaration. Once the Bankruptcy Court found the later-filed declaration was a sham, it simply did not need to consider it.

### 2.    Whether the $85 Million Debt is Dischargeable

Appellant's core contention on appeal is that the Bankruptcy Court erred in finding the COJ issue preclusive with respect to Appellant's fraud, thus finding the $85 million debt in the COJ nondischargeable. (ECF No. 9 at 30, 35-38.) Appellees counter that the Bankruptcy Court's finding that the COJ precluded a new trial on whether Appellant committed fraud was correct because the COJ satisfied the required elements of issue preclusion. (ECF No. 11 at 30.) The Court agrees with Appellees. The Bankruptcy court

---

[4] The later-filed declaration was self-serving because Appellant faced actually having to pay the $85 million he owes Appellees under the COJ if he lost at summary judgment, which would incentivize him to disavow the statements he previously signed onto in the COJ.

did not err in giving the facts in the COJ issue preclusive effect and finding the debt in the COJ nondischargeable.

The parties—and the Court—agree that Nevada law governs the issue preclusion analysis here, and agree as to the appropriate standard. (ECF Nos. 9 at 35, 11 at 30.) Four factors "are necessary for application of issue preclusion: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (internal quotations marks and citations omitted).

The Court agrees with the Bankruptcy Court that the COJ is entitled to issue preclusive effect here. This finding is again driven by the unique circumstances present in this case. Here, a court found that Appellant committed fraud. And even though those findings were later vacated, they were transmuted into the COJ, which Appellant then signed. Further, there can be no genuine dispute that the parties are not the same, or that the issue—fraud—was the same in both proceedings. Thus, the Court affirms the Bankruptcy Court's finding that the COJ debt is nondischargeable based on the Bankruptcy Court's issue preclusion analysis. (*Id.* at 11-24.) *See also In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009) (holding that the Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record.").

The Court is not persuaded by the various subsidiary arguments that Appellant raised in his appeal. The Court notes that many of Appellant's arguments were presented to, and correctly rejected by, the Bankruptcy Court. For example, Appellant argues that the Bankruptcy Court erred in giving the state court findings evidentiary weight, especially because the state court decision was vacated. (ECF No. 9 at 31-33.) But as the Bankruptcy Court pointed out, Appellant misses the point with those arguments. (ECF No. 10-5 at 10.) The Bankruptcy Court did not give preclusive effect to the vacated state court

decision—it gave preclusive effect to the COJ and only used the state court decision as further evidence that the COJ was actually litigated for purposes of its issue preclusion analysis. (*Id.* at 10-11.) Further, Appellant attempts to draw an unpersuasive distinction between fraud and nondischargeability to argue that the Bankruptcy Court erred in its claim preclusion analysis. (ECF No. 9 at 33-35.) But the Bankruptcy Court found the COJ was nondischargeable because Appellant affirmed he committed fraud in it, not, as Appellant seems to argue, that any party other than the Bankruptcy Court found the COJ debt was nondischargeable. (ECF No. 10-5 at 24.)

In sum, the Court affirms the Bankruptcy Court's decision that the COJ debt is nondischargeable.[5]

### B. Appellees' Cross-Appeal

The Bankruptcy Court denied judgment on Appellees' fourth cause of action following a trial, noting that it was unnecessary because Appellees were pursuing their fourth cause of action in the alternative to their first and second causes of action. (ECF No. 10-4 at 3.) Appellees assert that they were not pursuing alternative relief, and they should be entitled to an additional approximately $65 million from Appellant—the difference between the original state court judgment and the $85 million COJ—because the Bankruptcy Court made the findings necessary to show Appellees were entitled to relief on their fourth cause of action. (ECF No. 11 at 54-55.)

Despite the urging of both parties (ECF Nos. 9 at 50-51, 11 at 54-55, 15 at 27-29), the Court declines to disturb the Bankruptcy Court's ruling on Appellee's fourth cause of

---

[5]By signing the COJ, Appellant agreed that a set of facts was true—a nearly identical set of facts to those found by a court after extensive litigation and a trial. Those facts showed that Appellant committed fraud, and Appellees both relied on, and were harmed by, Appellant's statements that contributed to that fraud. The COJ was therefore different than the prepetition waivers of dischargeability at issue in other cases cited by the parties and the Bankruptcy Court. Said another way, the Court agrees with the Bankruptcy Court and Appellees that this case is more like *In re Johnson*, Case No. 3:16-AP-90186-LT, 2018 WL 1803002, at *1 (B.A.P. 9th Cir. Apr. 16, 2018), *appeal filed* IN RE: PAUL JOHNSON, ET AL V. W3 INVESTMENT PARTNERS, LP, 18-60025 (May 1, 2018), than *In re Wank*, 505 B.R. 878. (ECF No. 10-5 at 20-24 (explaining why this case is more like *In re Johnson* than *In re Wank*).)

action. As noted above, the Court affirms the Bankruptcy Court's finding that the COJ is nondischargeable. That means Appellant owes Appellees approximately $85 million less any money already paid. Finding that Appellant owes Appellees any more than that would be overreach, especially where, as here, the first and second causes of action require that Appellant's statements in the COJ are true, and the fourth cause of action requires that they are false. Those alternate realities cannot easily coexist. In sum, the Court affirms the Bankruptcy Court's Order in this case.

## VI.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of this appeal.

It is therefore ordered that the Bankruptcy Court's Order is affirmed.

It is further ordered that Appellees' motion to strike (ECF No. 13) is granted. The Clerk of Court is directed to strike AER 43 and 44, and strike Section (IV)(F)(9) of Appellant's opening brief (ECF Nos. 9 at 27-29, 10-44, 10-45).

It is further ordered that Appellees' motion to substitute parties (ECF No. 20) is granted. The Clerk of Court is also directed to substitute Maryanna Herbst, as trustee of the Herbst Family Trust dated December 17, 2002, in place and instead of Jerry Herbst.

The Clerk of Court is further directed to forward a copy of this order to the Bankruptcy Court.


DATED THIS 22nd day of January 2019.


MIRANDA M. DU
UNITED STATES DISTRICT JUDGE